DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants Areawide Home Buyers, Inc. and Laraine Porter appeal from the decision of the Summit County Court of Common Pleas granting summary judgment in favor of appellees Hershberger Construction, Inc. and Elson J. Hershberger. We affirm.
 I.
Laraine Porter is the president of Areawide Home Buyers, Inc. (collectively, "Buyer"), a corporation in the business of buying and selling homes. Buyer's business consists of buying homes from persons wishing to sell their homes quickly, then selling those homes to other persons at a later date. Buyer's business is not one of locating buyers for sellers, since Buyer is not a realtor licensed by the state of Ohio.
Elson Hershberger is the president of Hershberger Construction, Inc. (collectively "Seller"), a corporation in the business of building houses. The houses that Seller builds are either contract homes, where a buyer has contracted to buy the house before its construction, or "spec homes," where the house is built before there is a buyer.
In 1995, Seller built three "spec homes" located on Cyprus Avenue in Massillon, Ohio ("the Cyprus properties"). By May 1996, Seller had been unable to sell the Cyprus properties. Seller became aware of Buyer's business and contacted Buyer by telephone on May 14, 1996. Buyer and Seller then met on May 21, 1996.
The parties differ as to what occurred during those two meetings. Buyer asserts that during the May 14 telephone conversation, the parties agreed that Seller would sell the Cyprus properties to Buyer, and that the parties reached agreement on all terms except a price. Buyer also contends that at the May 21 meeting the parties agreed on a price for the Cyprus properties, and that the parties were to sign a contract the next day. Seller, on the other hand, asserts that it never agreed to sell the Cyprus properties to Buyer. Seller also avers that the parties never agreed on a price. The parties agree that Seller gave Buyer the keys to the Cyprus properties at the May 21 meeting.
The parties met again on May 22, 1996, when Buyer contends the parties were to have signed contracts for the sale of the Cyprus properties. However, no contracts were signed, as Seller wanted to make additional changes to any deal between the parties. Buyer and Seller continued to have discussions between May 22 and July 1996. Buyer made no payments to or on behalf of Seller at any time during the parties' discussions.
During the time that the parties were discussing the Cyprus properties, Buyer began to advertise the Cyprus properties as available to buyers. On at least one occasion, Seller told Buyer to continue advertising if Buyer so wished, even though the parties had no written agreement. In addition, on at least one occasion Buyer notified Seller that Buyer had people who were interested in buying two of the Cyprus properties. Buyer contracted with two parties to sell two of the Cyprus properties in July 1996.
On July 11, 1996, Buyer and Seller met at Buyer's office to work out the details of an agreement between the parties; however, no agreement was reached. The next day, Seller met with Buyer at Seller's office. Seller presented Buyer with options to purchase the Cyprus properties. Buyer objected to the option contracts, because the options gave Seller more money than Buyer had originally anticipated under the alleged oral contract. Seller indicated that Buyer could "take it or leave it." Because Buyer had contracted to sell two of the Cyprus properties and feared that the potential buyers would sue if Buyer did not meet its obligations, Buyer signed the option contracts. Buyer included a "U.D." with each signature to note Buyer's belief that the options were signed under duress. Buyer also tendered checks for $1,000 on each option. Buyer never exercised the options, and as of December 1996 Buyer had not been sued by the potential buyers of the Cyprus properties.
Buyer filed suit in the Summit County Court of Common Pleas on August 2, 1996. Buyer alleged two counts. The first count alleged fraud on the part of Seller and demanded that the parties' oral contract be enforced, and the second count sought a declaratory judgment that the option contracts that Buyer signed were invalid. Seller answered and counterclaimed on October 7, 1996.[1] Buyer twice amended the complaint. Thereafter, Seller moved for summary judgment, and Buyer opposed.
On April 15, 1997, the trial court granted Seller's motion for summary judgment on both counts of Buyer's complaint[2]
and set a trial date for Seller's counterclaim. Seller voluntarily dismissed the counterclaim on April 22, 1997. Buyer filed its notice of appeal on May 2, 1997.
 II.
Buyer asserts three assignments of error. We review each in due course.
 A. Summary Judgment Standard
Pursuant to Civ.R. 56(C), summary judgment is proper if:
 (1) No genuine issue as to any material fact remains to be litigated;
 (2) the moving party is entitled to judgment as a matter of law; and
 (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. Appellate review of a lower court's entry of summary judgment isde novo, applying the same standard used by the trial court.McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. See Dresher v. Burt (1996), 75 Ohio St.3d 280,293, limiting Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id.
Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. Henkle v. Henkle
(1991), 75 Ohio App.3d 732, 735.
 B. Part Performance Exception to Statute of Frauds
Buyer argues in the third assignment of error that the trial court should not have granted summary judgment because genuine issues of material fact existed as to whether the alleged oral contract was enforceable under the part performance exception to the Statute of Frauds. We disagree.
Ohio's Statute of Frauds, R.C. 1335.05, states in pertinent part: "No action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith * * *."[3] Thus, an action generally cannot be brought on an oral contract to sell land. One exception to the Statute of Frauds is the part performance exception. "[A] party seeking to avoid the statute of frauds by virtue of the doctrine of part performance must establish that he performed acts (1) which were exclusively referable to the oral agreement to convey land, and (2) which changed his position to his prejudice." Geiger v.Geiger (Nov. 16, 1993), Montgomery App. No. 13841, unreported, at 11-12.
There are generally three criteria for establishing part performance: "(1) evidence of a change in who possesses the land, (2) payment of all or part of the consideration for the land, and (3) improvements, alterations or repairs upon the land." Id. at 12. Accord 51 Ohio Jurisprudence 3d (1984) 320, Frauds, Statute of, Section 171. Generally, the performance of only one of the three acts is insufficient to establish part performance. Geiger,supra, at 12.
Construing the evidence adduced by the parties in a light most favorable to Buyer, part performance has not been established in the case at bar. Buyer may have established constructive possession by the delivery of keys, but this alone is not enough to show part performance. See 51 Ohio Jurisprudence 3d (1984) 324, Frauds, Statute of, Section 174. There is no evidence that Buyer made any improvements to the Cyprus properties, and it is undisputed that Buyer made no payments to Seller on the Cyprus properties. Buyer argues that the act of marketing and advertising the Cyprus properties creates part performance. However, the rendition of services is generally inadequate to take an oral contract out of the Statute of Frauds. See id. at 339-40, Section 188. The trial court properly granted summary judgment on the issue of part performance. Buyer's third assignment of error is overruled.
 C. Fraud Exception to Statute of Frauds
In the second assignment of error, Buyer contends that the oral contract is enforceable under the fraud exception to the Statute of Frauds. We disagree.
The fraud exception to the Statute of Frauds "consists in the refusal to perform an agreement upon the faith of which plaintiff has been misled to his injury, and not a mere refusal to perform an agreement, which, by reason of the Statute of Frauds, cannot be enforced by legal action." Marion Prod. Credit Assn. v. Cochran
(1988), 40 Ohio St.3d 265, paragraph two of the syllabus.[4]
However, "[f]raud cannot be premised upon the mere refusal to honor an alleged parol agreement that is otherwise unenforceable pursuant to the statute of frauds, R.C. 1335.05, particularly if the relief sought is the direct or indirect enforcement of the contract." Malone v. Koening (July 5, 1995), Medina App. No. 2381-M, unreported, at 3, citing Marion Prod. Credit Assn.,40 Ohio St. 3d at 273-76.
In the case at bar, Buyer has asserted fraud on the part of Seller by virtue of Seller's refusal to sell the Cyprus properties under the alleged oral contract. Buyer's claim cannot be countenanced under Marion Prod. Credit Assn. Buyer's second assignment of error is overruled.
 D. Requirement of "Meeting of the Minds"
Buyer's first assignment of error asserts that genuine issues of material fact exist as to whether there was a "meeting of the minds" between Buyer and Seller on the alleged oral contract. However, this assignment of error is moot. Assuming arguendo that a meeting of the minds occurred between Buyer and Seller that created an oral contract to sell the Cyprus properties, that oral contract cannot be enforced, given our disposition of Buyer's other two assignments of error above. Accordingly, Buyer's first assignment of error is overruled.
 III.
All of Buyer's assignments of errors are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellants.
 Exceptions. _________________________________ JOHN W. REECE
FOR THE COURT
QUILLIN, P. J.
BAIRD, J.
CONCUR
[1] During the interim, Seller moved for a change of venue. The trial court denied the motion, and that decision is not before us on appeal.
[2] Buyer has not appealed the granting of summary judgment on the second count.
[3] See, also, R.C. 1335.04, stating in pertinent part: "No lease, estate, or interest * * * in * * * lands * * * shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it * * *."
[4] Some confusion exists among the courts of appeals as to just what the fraud exception to the Statute of Frauds entails. See, e.g., Etter v. Bardon, Inc. (Sept. 2, 1994), Montgomery App. No. 14391, unreported (equating fraud exception with part performance exception); Yontz v. BMERInterprises, Inc. (1993), 91 Ohio App.3d 202, 207 ("We find it difficult to determine what allegations of a fraudulent use of the Statute of Frauds would `consist in something more than a mere breach of parol undertaking.'"), quoting Watson v. Erb
(1877), 33 Ohio St. 35, 48.