**YONTZ, Appellant,**

**v.**

**BMER INTERPRISES, INC. et al., Appellees.**

[Cite as *Yontz v. BMER Interprises, Inc.* (1993), 91 Ohio App.3d 202.]

Court of Appeals of Ohio,
Clark County.

No. 2999.

Decided Oct. 18, 1993.

*Thomas H. Lagos,* for appellant.

*Alan A. Biegel,* for appellees.

---

F<small>AIN</small>, Judge.

Plaintiff-appellant Robert A. Yontz appeals from a summary judgment rendered in favor of defendants-appellees BMER Interprises, Inc., Mark S. White, Edward Taylor and Randy Pettit (collectively "BMER"), with respect to Count III of the complaint herein. Although there are other claims for relief pending, the trial court has certified that there is no just reason for delay, pursuant to Civ.R. 54(B).

Yontz contends that the trial court erred when it found that he had failed to establish a genuine issue of material fact as to the existence of a fraudulent inducement or promissory estoppel sufficient to overcome BMER's statute of

frauds defense. We conclude that the trial court did not err in this respect. Accordingly, the judgment of the trial court is affirmed.

# I

Yontz purchased shares of stock in BMER, giving him an equal interest along with White, Taylor and Pettit. Yontz has alleged that White, Taylor and Pettit agreed that Yontz would be compensated as an employee of BMER in an amount equal to the compensation paid to the other shareholders, and that "each agreed that his employment was permanent."

Over a year after Yontz became a shareholder of BMER, his employment was terminated upon the ground that his performance was inadequate.

Specifically, Count III of Yontz's complaint alleges as follows:

"17. Plaintiff and Defendant BMER INTERPRISES, INC. entered into an agreement whereby Plaintiff was employed permanently by Defendant and could be discharged only on the basis of just cause.

"18. Defendant breached this contract of permanent employment between Plaintiff and Defendant. Therefore, Defendant BMER INTERPRISES, INC. is liable for all damages suffered by Plaintiff on account of this wrongful discharge in the amount of Five Hundred Thousand and 00/100 ($500,000.00) Dollars."

BMER moved for summary judgment with respect to Count III based on the Statute of Frauds, R.C. 1335.05, which provides, in pertinent part, as follows:

"No action shall be brought whereby to charge the defendant * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."

In support of its motion, BMER provided the affidavit of Taylor, the entire text of which is as follows:

"1. That he [Edward Taylor] is an officer of BMER INTERPRISES, INC. and has personal knowledge of the facts stated in this Affidavit;

"2. That Robert A. Yontz was an employee of BMER INTERPRISES, INC. from February 16, 1990 until July 22, 1991;

"3. That at no time was any written employment agreement ever entered into concerning the employment of Robert A. Yontz and specifically no written agreement or promise exists signed by any authorized person of BMER INTER-PRISES, INC. providing that his employment was permanent."

In opposition to BMER's motion for summary judgment, Yontz offered his own affidavit, the text of which is as follows:

"I, Robert A. Yontz, was more than just an employee of Bmer Enterprises [sic], Inc. I had paid substantial monies to the Corporation. There was $6,500.00 cash paid plus $8,500.00 was deducted from my salary, plus I had obligated myself in writing to pay certain obligations. My car had been utilized as collateral for a corporate loan. I parted with all these funds and engaged in all these transactions, including the writings associated therewith, because Edward Taylor, Mark S. White, and Randy Pettit had agreed with me that all the decisions, including employment decisions, were to be made by unanimous consent."

The trial court granted summary judgment to BMER with respect to Count III, holding as follows:

"Count III of the complaint alleges Defendant entered into an agreement with Plaintiff for permanent employment. The affidavit of a Defendant states no such agreement was ever entered into in writing and is not denied by Plaintiff. Further, Plaintiff failed to attach any written memorandum as to the terms of an employment agreement between Plaintiff and Defendants or any of them.

"The Court can only consider the facts of record at this time.

"[The Court then quoted R.C. 1335.05.]

"Clearly, the agreement as stated in Count III of Plaintiff's complaint was not to be performed within one year from the making thereof and no facts are presented to fall within any applicable exceptions stated in Ohio Revised Code § 1335.05.

"Therefore, Plaintiff is barred on Count III of his complaint by the terms of Ohio Revised Code § 1335.05 in that he failed to set forth facts therein upon which relief can be granted.

"Construing the facts most favorably to Plaintiff, reasonable minds can only conclude there is no genuine issue of fact as to Count III of the complaint, and Defendant is entitled to Summary Judgment as a matter of law.

"A final appealable judgment entry is to be prepared by Defendant's counsel in accordance with the terms and tenor of this decision and submitted to the Court with ten (10) days."

Subsequently, the trial court entered judgment, including a certification that there was no just reason for delay.

From the summary judgment rendered against him on Count III of his complaint, Yontz appeals.

## II

Yontz's sole assignment of error is as follows:

"The trial court erred in granting summary judgment on the basis of the Statute of Frauds."

### A

■ Yontz first argues that he established the existence of writings signed by the party to be charged, BMER, sufficient to avoid the bar of the Statute of Frauds. None of these writings was ever produced for the benefit of the trial court. The only reference to them is in Yontz's affidavit, in which he indicated that he made certain payments to BMER, obligated himself to pay certain corporate obligations, and pledged his car as collateral for a corporate loan, and that there were "writings associated therewith." This is hardly sufficient to establish the existence of writings, signed by the party to be charged, embracing enough of the alleged agreement between Yontz and BMER to take that agreement out of the scope of the Statute of Frauds.

### B

■ Yontz next argues that he was fraudulently induced to engage in certain undertakings detrimental to him and beneficial to BMER, based upon the promise of perpetual employment. Although he makes this argument alternatively based on a theory of promissory estoppel and on a theory of equity—that the Statute of Frauds cannot be used to commit a fraud—we conclude that in this context, at least, these arguments are indistinguishable.

Yontz relies upon *Marion Credit Assn. v. Cochran* (1988), 40 Ohio St.3d 265, 533 N.E.2d 325. In that case, the Supreme Court considered a claim that an alleged oral promise to release two guarantors who had executed a guarantee in writing upon the happening of a subsequent event was sufficient to avoid the bar of the Statute of Frauds, because otherwise the obligee in that case would be using the Statute of Frauds to commit a fraud. The Supreme Court held that the guarantors' counterclaim was properly dismissed by the trial court on the pleadings, as being barred by the Statute of Frauds.

In *Marion Credit Assn., supra,* the Ohio Supreme Court distinguished between an *abusive* use of the Statute of Frauds, which can be avoided by the person claiming an oral promise, and a *proper* use of the Statute of Frauds. The court quoted approvingly from *Watson v. Erb* (1877), 33 Ohio St. 35, 48, as follows:

" 'It must appear that the promise was used as a means of imposition and deceit. If the case taken as a whole is one of fraud, the verbal promise may be received in evidence as one of the steps by which the fraud was accomplished.

To deduce the fraud from the [oral] contract and then give effect to the contract on the score of fraud is reasoning in a circle. The fraud which will give jurisdiction to compel a performance of the parol * * * [agreement] must consist in something more than a mere breach of parol undertaking. * * *' " *Marion Credit Assn., supra,* 40 Ohio St.3d at 274, 533 N.E.2d at 333.

The Supreme Court further reasoned as follows:

" * * * Furthermore, in all these cases, plaintiffs alleged some sort of fraud which they claimed vitiated the statute. Even though there was an unperformed¹ oral promise to convey an interest in land in these cases, this court consistently upheld the application of the Statute of Frauds and refused to enforce the oral promise. Consequently, the Cochrans may not premise fraud upon PCA's mere refusal to honor the alleged parol agreement. This is especially so when what is sought is either direct enforcement of the alleged oral agreement or an indirect enforcement by such an award of damages as would discharge the Cochrans' obligations on the notes and mortgage." *Id.* at 274, 533 N.E.2d at 333.

We find it difficult to determine what allegations of a fraudulent use of the Statute of Frauds would "consist in something more than a mere breach of parol undertaking." If, in the absence of the repudiated oral promise, the transaction were otherwise fraudulent, there would be no need to avoid the bar of the Statute of Frauds, because there would be no need to rely upon the oral promise. If, on the other hand, the transaction would not have been fraudulent but for the repudiated oral promise, then the "mere breach of parol undertaking" becomes crucial to the cause of action, and the oral promise would appear to have become "boot-strapped" beyond the bar of the Statute of Frauds, since the existence of the oral promise is essential to establish the condition necessary to overcome its presumed nonexistence.

We conclude that what is meant by the *Watson* and *Marion Credit Assn.* cases is that where the detriment visited upon the oral promisee or the benefit accruing to the oral promisor would have no rational purpose but for the alleged oral promise, or would be grossly disproportionate to any other countervailing benefit to the oral promisee, then the bar of the Statute of Frauds may be overcome, since that circumstance, by itself, is significant evidence of the existence of the oral promise. However, where the conduct of the parties is readily explicable in the absence of the alleged oral promise, then the oral promisee cannot use a claim of fraud to "bootstrap" an oral promise otherwise barred by the Statute of Frauds into a fraud sufficient to overcome that bar.

Applying the foregoing reasoning to the case before us, we conclude that Yontz has merely averred that he paid a total of $15,000 to BMER, that he became obligated with respect to certain unspecified obligations of the corporation, and

that he pledged his car as collateral for a corporate loan. These are common occurrences for a shareholder in a close corporation, and do not require for their explication the existence of an oral promise to provide the shareholder with perpetual employment.

We would further note that Yontz has averred that BMER agreed that he would have a veto over the termination of his employment, regardless of the existence of just cause. In other words, BMER allegedly agreed that it had to continue Yontz's employment, and pay him for his services at the same rate that it paid the other shareholders, even if Yontz's services should prove to be of no value to the corporation. That agreement, even if it had been entered into, appears to us to have been unconscionable, and, therefore, unenforceable.

Yontz's sole assignment of error is overruled.

## III

Yontz's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BROGAN and WOLFF, JJ., concur.