**CONSOLIDATION SERVICES, INC., Plaintiff–Appellant,**

**v.**

**KEYBANK NATIONAL ASSOCIATION and KeyCorp, Defendants–Appellees.**

No. 98–4221.

United States Court of Appeals, Seventh Circuit.

Argued May 20, 1999.

Decided July 22, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 26, 1999.*

* Hon. Kenneth F. Ripple did not participate in the consideration of the petition.

Robert J. Gallagher (argued), M. Shields Gallagher & Gallagher, Northampton, MA, Alan J. Howarth, Gallagher & Howarth, Haydenville, MA, James H. Milstone, Landau, Omahana & Kopka, South Bend, IN, for Plaintiffs–Appellants.

Jeffery A. Johnson (argued), May, Oberfell & Lorber, South Bend, IN, for Defendants–Appellees.

Before POSNER, Chief Judge, and EASTERBROOK and ROVNER, Circuit Judges.

POSNER, Chief Judge.

This is a diversity suit for breach of contract brought by Consolidation Services, Inc. (CSI) against a bank. Applying Indiana law, which the parties agree governs the substantive issues in this case, the district judge granted summary judgment for the bank on the basis of the Indiana Credit Agreement Statute of Frauds, Ind. Code § 32–2–1.5. 29 F.Supp.2d 942 (N.D.Ind.1998). CSI argues that the requirements of the statute of frauds were satisfied, but alternatively seeks to avoid it by invoking doctrines of partial performance, fraud, and estoppel, both equitable and promissory.

CSI, a freight forwarder, had several outstanding real estate loans from the defendant bank plus a bank account and line of credit. Deciding to expand its business it made a number of new contracts with railroads, discovered that it was overextended, and sought an $8 million loan from the bank, which was refused. The bank did, however, agree to lend it $2.7 million for six weeks to give it time to seek longer-term financing. Repayment was due on September 30, 1994, but, with CSI strapped, the bank agreed to extend the loan, first to November 30, then to December 31, and finally to February 15, 1995. The parties met that day but have conflicting versions of what occurred at the meeting. They agree, though, that the bank, through its representative Joseph McGraw, made an oral offer to forbear collection efforts for another 45 days if CSI would allow the bank to take $500,000 from CSI's bank account and apply it to the repayment of the loan; would execute two mortgages to the bank; would establish a lockbox at the bank for the deposit of CSI's revenues; and would cross-collateralize the loan, that is, make the collateral for the bank's real estate loans to CSI also collateral for the $2.7 million loan. CSI claims that it accepted McGraw's offer (also orally) and that the bank promised to reduce their agreement to writing but never did so. The bank claims that CSI rejected the offer and that the bank then offered a 7–day forbearance in exchange for just the mortgages and the $500,000 and that CSI agreed to this substitute offer.

CSI executed the mortgages and authorized the bank to take $500,000 from its bank account. At the end of 7 days the bank began collection efforts by taking an additional $1.2 million from the account. This action precipitated CSI into insolvency because, in reliance on the 45–day agreement (it claims), it had not yet lined up substitute financing. Eventually it brought this suit for breach of the alleged contract to delay collection by 45, not 7, days in exchange for the four concessions that the bank had demanded.

An ordinary statute of frauds merely requires that the party sought to be charged, in this case the bank, sign a memorandum of the parties' agreement. The memorandum needn't be the contract itself; it need only be evidence of the contract and the contract's essential terms, *Newman v. Huff*, 632 N.E.2d 799, 803 (Ind.App.1994); *Block v. Sherman*, 109 Ind.App. 330, 34 N.E.2d 951 (1941); *Bower v. Jones*, 978 F.2d 1004, 1009 (7th Cir. 1992); *Vess Beverages, Inc. v. Paddington Corp.*, 941 F.2d 651, 654 (8th Cir.1991); *Restatement (Second) of Contracts* § 131, comment d (1981), and the other party to the alleged contract need not have signed anything. *Consolidated Bearings Co. v.*

*Ehret–Krohn Corp.*, 913 F.2d 1224, 1231 (7th Cir.1990); *St. Francis Medical Center v. Vernon*, 217 Ill.App.3d 287, 160 Ill.Dec. 276, 576 N.E.2d 1230 (1991). But like most other states in recent years, see, e.g., *Whirlpool Financial Corp. v. Sevaux*, 96 F.3d 216, 225 (7th Cir.1996) (Illinois); Todd C. Pearson, Note, "Limiting Lender Liability: The Trend Toward Written Credit Agreement Statutes," 76 *Minn. L.Rev.* 295, 296–97 (1991); Jeffrey A. Tochner, Note, "Limiting Lender Liability in Florida: The Application of a Statute of Frauds to Credit Agreements," 44 *Fla. L.Rev.* 807, 808 (1992), Indiana has added to its statute of frauds special provisions relating to credit agreements. The term includes agreements to "forbear from exercising rights under a prior credit agreement," Ind.Code § 32–2–1.5–5, which the agreement to forbear collecting the bank's loan to CSI is rightly conceded to have been. *Rural American Bank v. Herickhoff*, 485 N.W.2d 702, 705–06 (Minn.1992); *Carlson v. Estes*, 458 N.W.2d 123, 128 (Minn.App.1990); *First National Bank v. McBride Chevrolet, Inc.*, 267 Ill.App.3d 367, 204 Ill.Dec. 676, 642 N.E.2d 138, 141 (1994). The agreement itself must be in writing, must "set[ ] forth all the material terms and conditions of the agreement," and must be signed by both creditor and debtor. Ind.Code § 32–2–1.5–5; see also § 32–2–1.5–4.

McGraw, the bank's representative at the crucial meeting of February 15, described the 45–day offer at his deposition. The deposition was of course transcribed, and McGraw signed the deposition, thus attesting to its accuracy, while CSI's representative had already signed the mortgages. CSI argues that both debtor and creditor thus signed an agreement setting forth the material terms of the forbearance agreement. The argument is frivolous. The execution of the mortgages was not part of the agreement but part of the performance contemplated by it; the deposition was not an agreement; and the terms referred to in the deposition were the terms of an offer, not of an agreement—there was no written agreement, that is, a writing which not only contains terms but also indicates that the terms have been accepted. *Bower v. Jones, supra*, 978 F.2d at 1009; *Ed Schory & Sons, Inc. v. Society National Bank*, 75 Ohio St.3d 433, 662 N.E.2d 1074, 1079 (1996); compare *Newman v. Huff, supra*, 632 N.E.2d at 803; *Johnson v. Sprague*, 614 N.E.2d 585, 588 (Ind.App.1993).

■ The alleged 45–day forbearance agreement would be unenforceable even if only the general statute of frauds, and not the more stringent provisions governing credit agreements, were applicable here. It is true that the admission by the party to be charged that a contract exists can take the place of the signed memorandum ordinarily required to comply with the statute of frauds. *Bower v. Jones, supra*, 978 F.2d at 1009; *DF Activities Corp. v. Brown*, 851 F.2d 920, 923 (7th Cir.1988); *Holmes v. Torguson*, 41 F.3d 1251, 1255 (8th Cir.1994); *Nebraska Builders Products Co. v. Industrial Erectors, Inc.*, 239 Neb. 744, 478 N.W.2d 257, 268–69 (1992); *Quaney v. Tobyne*, 236 Kan. 201, 689 P.2d 844, 851 (1984). But McGraw's deposition did not admit the existence of the 45–day forbearance agreement, only the offer of such an agreement plus a subsequent agreement for a 7–day forbearance. The deposition is no evidence at all for the 45–day agreement; indeed, if it is believed, it is conclusive evidence against the existence of any such agreement, for if believed this means the offer was rejected. So we needn't get into the question, on which see *Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178, 1182–83 (7th Cir.1991); E. Allan Farnsworth, *Contracts* § 6.7, pp. 395–96 (3d ed.1999), when if ever a written offer satisfies the statute of frauds.

■ CSI argues that partial performance can take a contract out of the statute of frauds (again and throughout the remainder of this opinion we shall be discussing the general statute of frauds, not the special provisions for credit agree-

ments, which being stricter are even more conclusive against CSI's arguments). The principal purpose of the statute of frauds is evidentiary. It is to protect contracting or negotiating parties from the vagaries of the trial process. A trier of fact may easily be fooled by plausible but false testimony to the existence of an oral contract. This is not because judges or jurors are particularly gullible but because it is extremely difficult to determine whether a witness is testifying truthfully. Much pious lore to the contrary notwithstanding, "demeanor" is an unreliable guide to truthfulness. Michael J. Saks, "Enhancing and Restraining Accuracy in Adjudication," 51 *Law & Contemp. Probs.*, Autumn 1988, pp. 243, 263–64.

■ When, however, there is particularly compelling evidence of the contract's existence, the strictures of the statute of frauds can safely be relaxed, for example in the case of an admission. Partial performance is often indicative of a contract, but rarely of its terms, and so in most cases of partial performance of a contract subject to the statute of frauds the performer is remitted to his (noncontractual) remedy in quantum meruit for the value of his performance. *Cato Enterprises, Inc. v. Fine*, 149 Ind.App. 163, 271 N.E.2d 146, 159 (1971); *Monetti S.P.A. v. Anchor Hocking Corp., supra*, 931 F.2d at 1183–84; *McInerney v. Charter Golf, Inc.*, 176 Ill.2d 482, 223 Ill.Dec. 911, 680 N.E.2d 1347, 1352 (1997); *Fry Racing Enterprises, Inc. v. Chapman*, 201 W.Va. 391, 497 S.E.2d 541, 545 (1997) (per curiam).

The fact that CSI executed the two mortgages and allowed the $500,000 to be deducted from its bank account is as consistent with a 7–day forbearance agreement as with a 45–day agreement and so does not help to establish CSI's version of the contract. CSI's failure to authorize a lockbox arrangement and cross-collateralization is actually evidence in favor of the bank's version, though CSI tries to explain away this evidence by arguing that it was waiting for the bank to take the initiative with respect to these aspects of the agreement. And if CSI's partial performance counts for its version of the contract, the bank's partial performance, not only the 7–day forbearance but the collection efforts at the end of the 7 days, counts for the bank's version. In fact neither counts for anything so far as compliance with the statute of frauds is concerned.

■ Partial performance is appropriately used to save a contract seemingly barred by the statute of frauds when the circumstances leave little or no doubt about the existence and terms of the contract that was partially performed and the promisee's extracontractual remedies would be inadequate. See, e.g., *Monetti, S.P.A. v. Anchor Hocking Corp., supra*, 931 F.2d at 1183–84; *C.L. Maddox, Inc. v. Coalfield Services, Inc.*, 51 F.3d 76, 79 (7th Cir.1995); *Anostario v. Vicinanzo*, 59 N.Y.2d 662, 463 N.Y.S.2d 409, 450 N.E.2d 215, 216 (1983) (per curiam). The standard case is one in which real estate is conveyed pursuant to an oral agreement, and the buyer pays the purchase price and takes possession of the real estate and seeks to compel the seller to give him a deed to the property so that he can have a clean title. *Lux v. Schroeder*, 645 N.E.2d 1114, 1118–19 (Ind.App.1995); *Summerlot v. Summerlot*, 408 N.E.2d 820, 828–29 (Ind.App.1980); *Dupont Feedmill Corp. v. Standard Supply Corp.*, 182 Ind.App. 459, 395 N.E.2d 808, 811 (1979); *McMahan Construction Co. v. Wegehoft Bros., Inc.*, 170 Ind.App. 558, 354 N.E.2d 278, 282–83 (1976); *Luson Int'l Distributors, Inc. v. Mitchell*, 939 F.2d 493, 498 (7th Cir.1991) (interpreting Indiana law); *Podolsky v. Alma Energy Corp.*, 143 F.3d 364, 371–72 (7th Cir.1998); *Wells v. State Bank*, 24 Kan.App.2d 394, 945 P.2d 418 (1997). The doctrine of partial performance operates in such a case much like the doctrine of adverse possession, both being concerned with curing irregularities in the system of paper titles to real estate. These cases are remote from the present one.

CSI gets no help from the doctrine of promissory estoppel. A doctrine of contract law, its purpose is to enforce promises that while not supported by consideration, and so not enforceable under traditional principles of Anglo–American contract law were likely to induce and did induce reliance by the promisee. *First National Bank v. Logan Mfg. Co.*, 577 N.E.2d 949, 954 (Ind.1991); *All–Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir.1999); *Milwaukee Auction Galleries Ltd. v. Chalk*, 13 F.3d 1107, 1111 (7th Cir.1994); *Restatement (Second) of Contracts, supra,* § 90. Since the doctrine merely provides an alternative to consideration as a basis for enforcing a promise as a contract, it would be anomalous to use it to take an oral promise out of the domain of the statute of frauds. And so we read that "a claim of estoppel or fraud will not operate to remove a case from a Statute of Frauds where the promise relied upon is the very promise that the statute declares unenforceable if not in writing." *Ohio Valley Plastics, Inc. v. National City Bank*, 687 N.E.2d 260, 264 (Ind.App.1997); see also *Wabash Grain, Inc. v. Bank One*, 713 N.E.2d 323, 326–27 (Ind.App.1999); *Whiteco Industries, Inc. v. Kopani*, 514 N.E.2d 840, 844 (Ind.App.1987). The court in *Ohio Valley* added that the only exception it had ever recognized to applying the statute of frauds to oral promises sought to be enforced on a theory of promissory estoppel involved employment contracts. 687 N.E.2d at 264.

In some cases reliance on an oral promise may take a form that, as in some cases of partial performance, provides compelling evidence of the existence and terms of a contract, and then, once more, the statute of frauds is relaxed. *Mehling v. Dubois County Farm Bureau Cooperative Ass'n, Inc.*, 601 N.E.2d 5, 7 (Ind.App. 1992); *Creyts Complex, Inc. v. Marriott Corp.*, 98 F.3d 321, 324 (7th Cir.1996); *Yontz v. BMER Interprises, Inc.*, 91 Ohio App.3d 202, 632 N.E.2d 527, 530 (1993); see also *Whiteco Industries, Inc. v. Kopani, supra,* 514 N.E.2d at 845. It is in this

light that we should understand the occasional statement that promissory estoppel may be used to avoid the statute of frauds. See, e.g., *Ohio Valley Plastics, Inc. v. National City Bank, supra,* 687 N.E.2d at 264; *Tincher v. Greencastle Federal Savings Bank*, 580 N.E.2d 268, 272 (Ind.App. 1991); *Alaska Democratic Party v. Rice*, 934 P.2d 1313, 1316–17 (Alaska 1997); *Restatement (Second) of Contracts, supra,* § 139(2)(c) and illustrations 1–2. (Maybe even the credit agreement statute of frauds, see *Wabash Grain, Inc. v. Bank One, supra,* 713 N.E.2d at 326–27.) But not here. The evidence of reliance, besides the execution of the mortgages and the authorization to deduct $500,000 from CSI's bank account, which we have already discussed and found wanting as evidence of CSI's version of the contract, is CSI's failure to line up alternate financing during the 7 days of forbearance. It argues that it thought it had 45 days. But there is no evidence that it actually slacked off in its search for alternate financing during those 7 days, or indeed that it did anything different during this period from what it would have done had it known it had only 7 days. So once again there is no evidence of behavior consistent only with a 45–day forbearance agreement and not equally with a 7–day agreement. And remember that the plaintiff claims to have been searching for financing fruitlessly for months. That was the reason for all the extensions it sought and received from the bank. Since a six-month search had not produced any new financing, how likely is it that one more week would have made the difference?

Under the alternative and not clearly distinguished rubrics of equitable estoppel and fraud, CSI shifts its focus to the bank's alleged oral promise to reduce the 45-day forbearance agreement to writing. This might be construed as a promise to comply with the statute of frauds. But it would be bootstrapping to allow oral proof of such a promise to take it out of the statute of frauds and the better view,

which we are free to choose because the Indiana courts have not yet had occasion to take sides, is that the promise is unenforceable. *Reeves v. Alyeska Pipeline Service Co.*, 926 P.2d 1130, 1139–40 (Alaska 1996); *Orthomet, Inc. v. A.B. Medical, Inc.*, 990 F.2d 387, 391 (8th Cir.1993); *Yontz v. BMER Interprises, Inc., supra*, 632 N.E.2d at 530; *Harmon v. Tanner Motor Tours of Nevada, Ltd.*, 79 Nev. 4, 377 P.2d 622, 628–29 (1963); *Newkirk v. C.C. Bradley & Son, Inc.*, 271 A.D. 658, 67 N.Y.S.2d 459, 461–62 (1947); *contra, Byrne v. Laura*, 52 Cal.App.4th 1054, 60 Cal.Rptr.2d 908, 917–18 (1997); *McCarthy, Lebit, Crystal & Haiman Co. v. First Union Management, Inc.*, 87 Ohio App.3d 613, 622 N.E.2d 1093, 1102 (1993); *Reynolds v. Stevens Studios*, 659 F.2d 44 (5th Cir.1981); *In re Estate of Nelson*, 85 Wash.2d 602, 537 P.2d 765, 771–72 (1975); *Strong v. Hall*, 253 Or. 61, 453 P.2d 425, 429 (1969).

 It would be different if CSI could prove that the promise was fraudulent, *Chedick v. Nash*, 151 F.3d 1077, 1082–83 (D.C.Cir.1998); *McGriff v. Minnesota Mutual Life Ins. Co.*, 127 F.3d 1410, 1414 (11th Cir.1997); *Cabnetware, Inc. v. Birmingham Saw Works, Inc.*, 614 So.2d 1034, 1036–37 (Ala.1993); *Marion Production Credit Ass'n v. Cochran*, 40 Ohio St.3d 265, 533 N.E.2d 325, 333–34 (1988); *Harmon v. Tanner Motor Tours of Nevada, Ltd., supra*, 377 P.2d at 628–29, that is, that the bank when it made the promise (it of course denies having made it, since it denies that the parties ever agreed on a 45–day forbearance) did not intend to carry it out. Not all states recognize a concept of promissory fraud, e.g., *Desnick v. American Broadcasting Cos.*, 44 F.3d 1345, 1354 (7th Cir.1995), but most do, including Indiana. *Paulson v. Centier Bank*, 704 N.E.2d 482, 490–91 (Ind.App. 1998); *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1250 (Ind.App.1998); *Abbott v. Bates*, 670 N.E.2d 916, 923 n. 4 (Ind. App.1996). But there is no actual claim of fraud here. CSI's lawyer labors under a deep misunderstanding of the meaning of the word "misrepresentation." To him, a promise that is not fulfilled, for whatever reason, is a misrepresentation. This view would turn every breach of contract into a fraud. *Desnick v. American Broadcasting Cos., supra*, 44 F.3d at 1354; *Pearson, supra*, at 322–23. A promise is fraudulent only if it misrepresents the promisor's state of mind, *Bower v. Jones, supra*, 978 F.2d at 1012; *Cabnetware, Inc. v. Birmingham Saw Works, Inc., supra*, 614 So.2d at 1037; *McGriff v. Minnesota Mutual Life Ins. Co., supra*, 127 F.3d at 1414; *Restatement (Second) of Torts* § 530(1) and comment d (1977), and of that there is no allegation here, let alone evidence. So far as appears, if the bank did promise to reduce a 45–day forbearance agreement to writing (or to wire money to one of CSI's railroad customers, another promise that CSI alleges the bank made to it), it intended at the time to carry out the promise and then later for some reason changed its mind.

CSI has, then, no defense to the statute of frauds.

Affirmed.