In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1180

SKYWALKER COMMUNICATIONS OF INDIANA, INC.,

*Plaintiff-Appellant,*

*v.*

SKYWALKER COMMUNICATIONS, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:99-CV-385—**William C. Lee**, *Judge.*

ARGUED FEBRUARY 13, 2003—DECIDED JUNE 25, 2003

Before COFFEY, MANION, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* In this appeal, an Indiana corporation originally known as Apollo Satellite Systems, Inc. challenges the dismissal of its contract-based diversity suit as barred by Indiana's statute of frauds. We affirm.

According to the complaint and attached documents, Apollo entered a written contract with a Missouri corporation called Skywalker Communications, Inc. to sell satellite equipment under the "Skywalker" name through a network of dealers. The written contract, which was dated 1992 and was attached to the complaint, provided for automatic yearly renewal but required Apollo to cease

using the Skywalker name upon the contract's termination. Four years later, the complaint alleged, Apollo (which was then operating as "Skywalker Communications of Indiana, Inc.") entered a second agreement with Skywalker that was "separate and independent" from the first. The 1996 agreement, which Apollo conceded was unwritten, concerned the sale of EchoStar brand satellite equipment in a seven-state territory for which the parties hoped to obtain distribution rights. According to the complaint, the parties agreed to split the sales territory but to hold themselves out to EchoStar as a single entity for purposes of securing the contract. A contract attached to the complaint shows that EchoStar granted distribution rights for the territory to Skywalker (but not Apollo) for a five-year period. Also attached were two letters from Skywalker dated 1999: one notifying Apollo that Skywalker would not be renewing the 1992 contract for the following year and that Apollo must cease using the Skywalker name; another to Apollo's dealers informing them that Apollo was no longer an authorized distributor of EchoStar products and inviting the dealers to place future EchoStar orders through Skywalker instead.

The complaint sought recovery under a variety of theories: constructive fraud based on Skywalker's misrepresentations relating to the oral agreement; criminal mischief, conversion, and breach of contract and fiduciary duty based on Skywalker's failure to pay amounts owed to Apollo under the oral agreement; and tortious interference with Apollo's dealer contracts relating to EchoStar equipment sales. Skywalker sought dismissal based on Indiana's statute of frauds, which bars actions involving an agreement not to be performed within one year from its making unless the agreement or a memorandum describing it is in writing and signed by the party to be charged, *see* Ind. Code § 32-21-1-1, and the district court, observing that the object of the oral agreement was the

fulfillment of a five-year EchoStar distribution contract, granted the motion. *See Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001) (complaint may be dismissed based on statute of frauds); *Zayre Corp. v. S.M. & R. Co., Inc.*, 882 F.2d 1145, 1153 (7th Cir. 1989) (same).

Apollo does not dispute the district court's conclusion that the oral agreement could not be performed within one year, but it contends that the agreement is sufficiently described by certain documents attached to its complaint. That argument is waived, however, because Apollo failed to raise it in the district court, where it argued instead that the agreement *was* capable of being performed within one year and that partial performance removed the agreement from the statute of frauds. *See, e.g.*, *Zayre*, 882 F.2d at 1154-56 (refusing to consider new arguments about why oral contract survived Illinois statute of frauds). Even were we to consider the argument we would not find it persuasive. Multiple memoranda may satisfy the writing requirement if each indicates that it is related to the same transaction and is signed by the party to be charged, *see, e.g., Newman v. Huff*, 632 N.E.2d 799, 803 (Ind. Ct. App. 1994), and if the memoranda, taken together, contain all of the agreement's "essential stipulations and undertakings," *see Whiteco Indus., Inc. v. Kopani*, 514 N.E.2d 840, 847 (Ind. Ct. App. 1987); *Block v. Sherman*, 34 N.E.2d 951, 955 (Ind. Ct. App. 1941). *See also Consolidation Servs. Inc. v. Keybank Nat'l Ass'n*, 185 F.3d 817, 819 (7th Cir. 1999) (under Indiana law, writing must be evidence of the contract itself and its essential terms). Here, Apollo points to several documents: the 1992 contract; distributor agreements Skywalker entered with EchoStar and another satellite company; a letter reflecting a territory-sharing agreement the parties reached in 1998; and Apollo's own business records from 1999. But none of these documents mention an agreement formed between Skywalker and Apollo in *1996*,

let alone specify what amounts Skywalker might have been obligated to pay Apollo under such an agreement. *Cf. Zayre*, 882 F.2d at 1152-54 (letters between company presidents unlikely to satisfy writing requirement because they did not mention agreement to buy jewelry or agreement to pay mark-up price for it). Apollo's only explanation as to how these documents imply the existence of a 1996 agreement is its assertion that "[g]iven [ ] that the 1992 Agreement existed between the [ ] corporations, only a short leap is required to reach the conclusion that [the 1996 agreement] did as well." We disagree.

On the contrary, the 1992 contract and other documents are no more supportive of Apollo's contention that the parties formed a second agreement in 1996 than with Skywalker's position that the parties did *not* enter a second agreement in 1996 but instead continued operating under the 1992 written contract until Skywalker properly terminated it in 1999. *Cf. Consolidation Servs.*, 185 F.3d at 820-21 (partial performance that is equally consistent with competing versions of contract will not remove contract from Indiana statute of frauds).

Apollo also contends that its claims for fraud, conversion, criminal mischief, promissory estoppel, and tortious interference with contractual relations are unaffected by the statute of frauds, which Apollo says is a defense only to contract claims. But the statute works more like a rule of evidence, *see, e.g.*, *Webcor Packaging Corp. v. Autozone, Inc.*, 158 F.3d 354, 356 (6th Cir. 1998); *Blanke v. Alexander*, 152 F.3d 1224, 1231 (10th Cir. 1998), barring any action, however labeled, that turns on proof of an oral promise, *see Ohio Valley Plastics, Inc. v. Nat'l City Bank*, 687 N.E.2d 260, 263-64 (Ind. Ct. App. 1997) (borrower's fraud suit based on loan officer's false assurances that loan had been approved was in substance an action upon an unwritten loan agreement and so was barred by statute of frauds); *Whiteco*, 514 N.E.2d at 844.

It is true, as Apollo notes, that promissory estoppel may be used to avoid the statue of frauds, *see, e.g.*, *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001); *Ohio Valley*, 687 N.E.2d at 264, but as we have explained before, the exception is limited to cases where reliance on an oral promise provides compelling evidence of the existence and terms of a contract, *see Consolidation Servs.*, 185 F.3d at 822. Apollo's only asserted acts of reliance are expenditures on advertising, inventory, and dealership development. Because these acts are fully consistent with Skywalker's position that the parties were operating under the original contract, they are not compelling evidence of the existence or terms of a later oral agreement.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*