United States Court of Appeals,

Eleventh Circuit.

No. 97-6007.

Joel McGRIFF, Plaintiff-Appellee,

v.

MINNESOTA MUTUAL LIFE INSURANCE COMPANY, THE, a corporation, Defendant-Appellant.

Nov. 18, 1997.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV-95-G-2062-S), J. Foy Guin, Judge.

Before ANDERSON and COX, Circuit Judges, and ALARCÓN[*], Senior Circuit Judge.

COX, Circuit Judge:

Minnesota Mutual Life Insurance Company ("MML") appeals from a judgment entered on a jury verdict in favor of plaintiff Joel McGriff awarding $250,000 in compensatory damages for fraudulent inducement and fraudulent suppression. We vacate and remand with instructions.

I. BACKGROUND

In the fall of 1987, MML recruited Joel McGriff as an MML agent. At the time, McGriff was employed by Principal Mutual Life Insurance Company, where he had been an active agent since 1983. While being recruited, McGriff received a recruiting booklet describing the uniqueness of the business opportunities at MML. The booklet stated in part that those entering into a "partnership" with MML would "end up owning a business and ... renewals after five years, with an equity value of $50,000 to $500,000." McGriff also visited MML's home office in St. Paul, where he met with Terry Sullivan, the Senior Vice President of the Individual Division of MML. McGriff testified that Sullivan represented employment with MML as a unique business opportunity in that McGriff would be able to build, develop, and increase the value of his own business. McGriff also testified that other senior employees told him that while working at MML, he would have the

[*]Honorable Arthur L. Alarcon, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

opportunity to build his own business with a specific equity value, much like a franchise. Based on these statements, McGriff understood the MML business opportunity to include, in addition to renewal income, compensation for McGriff's "block of business" if and when his agency with MML terminated.

On October 12, 1987, McGriff signed an agent's contract with MML, and from 1987 until 1994 sold insurance policies and annuities for MML. In May of 1994, the general agent in Birmingham, under whom McGriff had been working, left MML. Shortly after the general agent's resignation, MML wrote McGriff a letter terminating his Agent's Contract because of the general agent's departure. After receiving this letter, McGriff met and spoke with people at MML to discuss his future with the company. Subsequently, McGriff continued to operate as an MML agent, and the letter was apparently never put into effect. In September of 1994, McGriff expressed concern to MML about additional expenses he was incurring because of the absence of a general agent. MML and McGriff reached an agreement whereby McGriff would receive additional compensation if he could successfully place one million dollars of annuity business with MML by December 31, 1994. Dale Martin, who in 1994 was MML's Assistant Superintendent of Agencies for the Eastern Region, wrote McGriff a letter dated September 13 confirming the agreement. Additionally, the letter stated as follows:

> In this case, a Service Office is a viable solution. However, at some point we have to determine if the production received and the quality of supervision is adequate enough to justify continuing the service office. In your case we feel there is enough potential business. You have proven in the past that you are a loyal, high impact agent. We would like to see you back on top. Obviously, the Service Office arrangement option is continually monitored.... Joel, I hope this arrangement is satisfactory to you. It is time to put the past behind us and build for the future.

After receiving the September 13 letter, McGriff leased new office space, hired an office manager and secretary, and purchased additional office equipment and furniture. Additionally, he began placing annuities with MML in an effort to meet the one million dollar goal.

Also on September 13, William Owens, the Director of Agencies for the Eastern Region of the Individual Division, sent an internal memorandum to Dave Goers, a MML vice president in the

2

Agency Administration section. Owens expressed concern over the changing legal environment in Alabama and contemplated withdrawing MML's products and services from Alabama and severing relationships with unsupervised agents. In an internal memorandum from Goers to Sullivan dated October 4, 1994, Goers recommended terminating all agents in the Birmingham office except for one designated service representative. MML informed McGriff of the decision to terminate him in a letter dated December 2.

McGriff testified that he read the Agency Contract before signing it and that he understood MML's right, under the contract, to terminate him at any time without cause. McGriff also testified that the Agent's Contract set forth the compensation that McGriff, as an MML agent, was entitled to receive upon termination of the contract, but that the Agent's Contract did not include any provisions stating that MML would buy his block of business or compensate him for the value of his business upon termination of the agency relationship. The Agency Contract stated that neither a Production Bonus nor a Quality Bonus nor Service Fees would be paid after the agency relationship terminated.

## II. PROCEDURAL HISTORY

McGriff sued MML in the Circuit Court for Houston County, Alabama, for outrage, libel, breach of contract and fraud. MML removed the case to the United States District Court for the Middle District of Alabama; the case was then transferred to the United States District Court for the Northern District of Alabama. The district court granted MML's motion for summary judgment as to the outrage, libel, and breach of contract claims, rendering the fraud claims the sole claims remaining for trial. At trial, the district court denied MML's motions for judgment as a matter of law, and the jury returned a verdict for $250,000 in compensatory damages. Following the jury's verdict, MML moved for a judgment notwithstanding the verdict or, alternatively, for a new trial. The district court denied this motion as well.

On appeal, MML contends that the district court erred in (1) denying its motion for summary judgment as to the fraud claims; (2) denying its motions for judgment as a matter of law at the close

3

of the plaintiff's evidence and at the close of all the evidence; (3) denying its motion for judgment notwithstanding the verdict; and (4) denying its motion for a new trial based upon errors occurring during the trial.

## III. DISCUSSION

In his fraudulent inducement claim, McGriff alleges that MML fraudulently induced him to leave his former employment and to sign the Agency Contract with MML by leading him to believe that by entering into an agency relationship with MML, he would be building his own business with an equity value. In his fraudulent suppression claim, McGriff alleges that in the fall of 1994, MML fraudulently suppressed the fact that MML was contemplating McGriff's termination while at the same time encouraging him to remain as an agent with MML and to place more business with MML.

### A. FRAUDULENT INDUCEMENT

The first issue we address is whether the trial court erred in denying MML's motion for judgment as a matter of law on McGriff's claim of fraudulent inducement. A party is entitled to judgment as a matter of law if "there is no legally sufficient evidentiary basis" for a reasonable jury to find for the opposing party. Fed.R.Civ.P. 50(a)(1). A scintilla of evidence in support of a verdict is insufficient to withstand a motion for judgment as a matter of law; there must be substantial evidence to support the verdict. *Walker v. Nationsbank of Florida, N.A.,* 53 F.3d 1548, 1555 (11th Cir.1995). We review *de novo* the district court's decision to deny MML's motion for judgment as a matter of law. *See, e.g., Daniel v. City of Tampa,* 38 F.3d 546, 549 (11th Cir.1994). In evaluating the motion for judgment as a matter of law, we must consider "all of the evidence and reasonable inferences arising therefrom in the light most favorable to the nonmoving party." *Richardson v. Leeds Police Dep't.,* 71 F.3d 801, 805 (11th Cir.1995).

Under Alabama law, to prevail on a fraudulent inducement claim, McGriff must prove: (1) MML had a duty to speak the truth; (2) MML made a false representation of material fact; (3) McGriff justifiably relied upon the false representation; and (4) as a proximate result, McGriff suffered loss, harm, or damage. *See Kidder v. AmSouth Bank, N.A.,* 639 So.2d 1361, 1362

4

(Ala.1994); *Alfa Mut. Ins. Co. v. Northington,* 561 So.2d 1041, 1045 (Ala.1990). Additionally, an action for promissory fraud, in which the alleged fraud concerns a future promise as opposed to a present fact, does not lie unless McGriff proves that at the time MML made the alleged misrepresentations, it intended not to do the acts promised and intended to deceive McGriff. *See Sealing Equip. Prod. Co. v. Velarde,* 644 So.2d 904, 908 (Ala.1994).

We begin our analysis by noting that there has been considerable debate in the Alabama courts as to the proper application of the "reliance" element in fraud cases. Initially, Alabama courts applied a "reasonable reliance" standard to both consumer and commercial transactions, holding that "if a ... plaintiff, acting as a reasonably prudent person exercising ordinary care, would have discovered the "true facts' before acting on the alleged misrepresentation, then, as a matter of law, the plaintiff could not have relied on the misrepresentation." *Johnson v. State Farm Ins. Co.,* 587 So.2d 974, 977 (Ala.1991) (citing *Torres v. State Farm Fire & Casualty Co.,* 438 So.2d 757 (Ala.1983), *overruled by Hickox v. Stover,* 551 So.2d 259 (Ala.1989)). Courts applying this standard generally held that "fraud or misrepresentation cannot be predicated upon a verbal statement made before execution of a written contract when a provision in that contract contradicts the verbal statement." *Tyler v. Equitable Life Assurance Soc'y of the United States,* 512 So.2d 55, 57 (Ala.1987). Under this reasoning, contract provisions that are contrary to prior oral representations give the party a reason to doubt the truth of the representations, thereby rendering any reliance on those representations unreasonable. *See Tyler,* 512 So.2d at 57.

In *Southern States Ford v. Proctor,* Chief Justice Hornsby, in a special concurrence, proposed a new test for the reliance element in actions alleging consumer fraud: "A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully understand the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth." 541 So.2d 1081, 1091-92 (Ala.1989) (citation omitted). The Alabama Supreme Court began applying this new "justifiable reliance" standard in cases

5

involving commercial transactions, beginning with *Hickox v. Stover,* 551 So.2d 259 (Ala.1989). In *Harris v. M & S Toyota,* 575 So.2d 74, 77 (Ala.1991), the Alabama Supreme Court held that "[t]his Court has abandoned the requirement of "reasonable reliance'.... The present standard of "justifiable reliance' requires ... [t]he party receiving the representation is required to be alert to statements that are patently false." The "justifiable reliance" standard governed in Alabama until recently, when the Alabama Supreme Court overruled *Hickox* and returned to the "reasonable reliance" standard set out in *Torres. See Foremost Ins. Co. v. Parham,* 693 So.2d 409, 421 (Ala.1997).

However, in *Foremost Insurance Co.,* the court explicitly stated that the new standard was applicable to all cases filed after March 14, 1997. The instant case was filed on May 18, 1995, and the "justifiable reliance" standard is therefore applicable. Therefore, we must determine whether McGriff's reliance on oral representations made prior to his executing a contract containing statements inconsistent with the oral representations was *unjustifiable* as a matter of law.

In several cases decided after *Hickox,* the Alabama Supreme Court reaffirmed the general rule that "as a matter of law, a person with the ability to read and to understand the nature of the transaction cannot act on an oral representation when that representation is followed by an executed document that contradicts it." *Alfa,* 561 So.2d at 1046; *see also Ramsay Health Care, Inc. v. Follmer,* 560 So.2d 746, 749 (Ala.1990). *But see Patten v. Alfa Mutual Ins. Co.,* 670 So.2d 854, 856 (Ala.1995) (reversing the trial court's grant of summary judgment on a fraudulent inducement claim, notwithstanding a contractual provision that contradicted oral misrepresentations). However, the Alabama Supreme Court has declined to hold that a party's reliance is unjustifiable as a matter of law when the language of the contract did not contradict the oral representations or when the misrepresentation was not discoverable upon reviewing the written documents, such as a document containing technical terms within the sole understanding of the drafter of the document. *See Ramsay,* 560 So.2d at 752; *Dixon v. SouthTrust Bank of Dothan,* 574 So.2d 706, 709 (Ala.1990); *Alfa,* 561 So.2d at 1045-46.

In the instant case, we are convinced that, as a matter of law, McGriff could not have justifiably relied upon MML's representations that he was building his own business with an equity value and that MML would compensate McGriff for his "block of business" when the agency relationship terminated.[1]  McGriff testified that no one specifically told him MML would purchase his business.  More importantly, however, McGriff signed an Agency Contract that directly contradicted the alleged misrepresentations made by MML. The Agency Contract specifically defines the compensation McGriff was entitled to receive upon termination of the agency relationship and includes no provision for the purchase of his "block of business."  In fact, while McGriff testified that he assumed his block of business consisted of service fees, trail fees, quality bonuses, and cost of living increases on certain types of existing policies, and his expert, Dr. Solomon, computed McGriff's damages based on these items, the contract specifically states that no quality bonuses, service fees, or production fees would be paid after the agency relationship terminated.

McGriff had been in the insurance business for several years before signing on with MML. McGriff testified that he read the contract before he signed it.  The contract expressly states that service fees and quality bonuses will not be paid after the agency relationship terminates, both items that McGriff stated he assumed would be part of the formula for determining the value of his "block of business."  McGriff " "must have closed his eyes to avoid discovery of the truth.' "  *Foremost Ins. Co.,* 693 So.2d at 420 (quoting *Southern States Ford,* 541 So.2d at 1091-92).  Accordingly, because there was no legally sufficient evidentiary basis for a reasonable jury to find for McGriff on his claim of fraudulent inducement, we hold that the district court should have granted MML's motion for judgment as a matter of law.

*B. FRAUDULENT SUPPRESSION*

[1]We note that McGriff did not attempt to prove damages resulting from his leaving his job with Principal Mutual Life Insurance Company, nor did he attempt to prove damages for lost income between the time he left Principal Mutual and started working for MML. Indeed, McGriff's expert focused solely on the value of McGriff's block of business and on the value of the annuities McGriff allegedly lost in the fall of 1994.  (R.5 at 220-233).

The second issue we address is whether the trial court erred in denying MML's motion for judgment as a matter of law as to McGriff's claim that in the fall of 1994, MML fraudulently suppressed the fact that MML was contemplating his termination while, at the same time, encouraging him to place additional business with MML. Under Alabama law, to succeed on a claim of fraudulent suppression, McGriff must show that MML failed to disclose a material fact, thereby creating a false impression on which McGriff relied, believing it to be true, which proximately caused damages. *See Ford New Holland, Inc. v. Proctor-Russell Tractor Co.,* 630 So.2d 395, 398 (Ala.1993). Specifically, McGriff points to the letter dated September 13, which stated that "[i]t is time to put the past behind us and build for the future." McGriff testified that this letter led him to believe his position with MML was somewhat secure and induced him to place a considerable amount of business with MML. McGriff presented evidence that at the same time he received this letter, MML was at least contemplating the termination of unsupervised agents such as McGriff. Further, an internal memo dated October 4 specifically proposed appointing Diane Cook as service representative for the Birmingham service office but terminating all other agents. McGriff claims that had he known that his position with MML was in jeopardy, he would not have placed the additional business with MML. McGriff testified that he lost the income flow of at least some of these annuities when he was terminated from MML.

Viewing the evidence in the light most favorable to McGriff, we conclude that McGriff presented substantial evidence to support a verdict in his favor on the fraudulent suppression claim. McGriff presented evidence that MML knew at the time it sent the letter dated September 13 to McGriff or shortly thereafter that McGriff's position was in jeopardy, that the September 13 letter induced him to place additional business with MML that he would have placed elsewhere had he known his position was in jeopardy, and that he suffered damages as a result in the form of lost income flow from the annuities that he placed with MML rather than with other companies for whom he was an agent. Therefore, the district court did not err in denying MML's motion for judgment as a matter of law on the fraudulent suppression claim.

8

Our decision to reverse the district court's denial of MML's motion for judgment as a matter of law on the fraudulent inducement claim requires a new trial.[2] A general verdict was returned by the jury. Thus, the verdict could have been based upon two possible claims, one of which was improperly submitted to the jury. Because we have no evidence upon which to determine the basis of the verdict reached by the jury, the verdict must be set aside. *See Grant v. Preferred Research, Inc.,* 885 F.2d 795, 800 (11th Cir.1989) (citations omitted). We vacate the judgment of the district court; the fraudulent suppression claim is remanded for a new trial on both the issue of MML's liability as to the fraudulent suppression claim and the amount of damages, if any, arising from that claim; the district court is instructed to enter judgment in favor of MML on the fraudulent inducement claim.

VACATED AND REMANDED WITH INSTRUCTIONS.

---

[2]Our decision also renders it unnecessary to address the other issues MML raises on appeal.