[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11713
Non-Argument Calendar
_____

D.C. Docket No. 2:15-cv-01069-RDP

ALLISON HARBIN,

Plaintiff - Appellant,

versus

ROUNDPOINT MORTGAGE COMPANY,
a foreign corporation,
FIRST GUARANTY MORTGAGE CORPORATION,
a foreign corporation,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(December 17, 2018)

Before TJOFLAT, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

In late May 2015, five days before the scheduled foreclosure sale of her home, Allison Harbin asked the servicer of her mortgage loan, Roundpoint Mortgage Company ("Roundpoint"), to postpone the sale so that she could finish a loan-modification application she had submitted to Roundpoint a few days earlier. She stated that she would be filing for bankruptcy protection if postponement was not an option. A Roundpoint employee looked into the matter and then, after initially saying that the sale was still set to go forward, told her that the foreclosure sale had been suspended temporarily and directed her to submit the remaining documents necessary to review her application.

Believing that the sale had been postponed, Harbin did not file for bankruptcy and instead attempted to finish the loan-modification application. Roundpoint never postponed the sale, however. Harbin discovered that fact about two weeks later when, while gathering documents for the application, she learned that her home had been sold.

Harbin then sued both Roundpoint and the lender, First Guaranty Mortgage Corporation ("First Guaranty"), alleging fraud and breach of contract, among other claims. The district court granted summary judgment for the defendants, and Harbin appealed. We conclude that a reasonable jury could find in Harbin's favor on her fraud claim against Roundpoint, so we vacate the grant of summary judgment on that claim. We affirm the district court in all other respects.

2

## I. Background

*A.　Facts*

Harbin defaulted on her home mortgage loan in October 2014. Several months later, Roundpoint, which serviced the loan for First Guaranty, notified Harbin that it was accelerating the loan—demanding full payment of the amount due—and initiating the foreclosure process. Roundpoint originally scheduled the foreclosure sale for April 27, 2015, but under a forbearance agreement between Roundpoint and Harbin, the sale was rescheduled for June 3, 2015.

During the forbearance, Harbin worked on a loan-modification application, which she submitted to Roundpoint on May 25, 2015. Four days later, on May 29, she called Roundpoint to check on the status of her application. She spoke with Roundpoint employee Daniel Gerstenfeld, who confirmed receipt of her application but said that it was incomplete.

During the call, Harbin explained that she wanted to save her home and that she had recently spoken with a bankruptcy attorney. She said that she did not want to file for bankruptcy but might need to because the foreclosure sale date of June 3 was quickly approaching. She stated that she was "looking for more time" and that she "need[ed] the sale date pushed back to figure this out." Gerstenfeld told her to "get that documentation into us and then we will try to do what we can to get that

sale postponed."  Harbin responded that another Roundpoint employee had said the loan-modification application would postpone the sale.

After having another associate look over the account with him, Gerstenfeld told Harbin that the sale was "still set to go."  He then went to find someone else who could provide "more clarification."  When he returned, Gerstenfeld reported that another person had looked over the account with him and that "[i]t does look like it has been suspended temporarily," so she should "[j]ust go ahead and send in that remaining documentation that I went over with you."  Harbin asked Gerstenfeld to send her an email confirming "that my date has been temporarily postponed." Gerstenfeld responded, "Okay."  Harbin emphasized to "[b]e sure and put in there that, about the date postponing."  Gerstenfeld again said, "Okay."

Later that same day, Harbin and Gerstenfeld exchanged a few emails. Gerstenfeld wrote to identify the documents that were still needed for her loan-modification application and to provide her with a copy of one of the required forms. In her reply, Harbin reviewed their phone discussion and renewed her request for confirmation of the postponement.  She explained that she had asked Gerstenfeld about "the postponement of the June 3rd sale day" and that he had "confirmed" that the sale had been "temporarily postponed" "after speaking with another constituent of Roundpoint."   Noting that Gerstenfeld had agreed to memorialize that confirmation through email, she asked him to confirm that "the sale date on my

4

house has been postponed."    A little while later, Harbin emailed Gerstenfeld additional documents for her application and again requested that he "please confirm that [the] sale date of June 3rd has been postponed."  Gerstenfeld wrote back, "The Foreclose [sic] has been suspended temporarily."

On June 2, 2015, Roundpoint sent Harbin a letter stating that her application was incomplete.  One of the documents requested was a copy of her homeowners' association ("HOA") bill.  The next day, the foreclosure sale was held.  Roundpoint did not suspend and had no intention of suspending the sale.  Harbin learned of the sale a few weeks later while attempting to obtain the HOA invoices.

### B.    Procedural History

Harbin retained counsel and then sued Roundpoint in federal court for fraud and breach of contract, among other things.  *See* 28 U.S.C. § 1332.  She later filed an amended complaint adding claims against First Guaranty.  Following discovery, Roundpoint and First Guaranty moved for summary judgment on all claims.

At issue in this appeal are Harbin's claims for fraud and breach of contract against Roundpoint and First Guaranty.[1]  For her fraud claim, Harbin argued that

---

[1] Harbin brought several other claims against both defendants.  Her amended complaint contained the following counts against both Roundpoint and First Guaranty: (1) breach of contract; (2) negligence/wantonness; (3) fraud; (4) breach of fiduciary duty; and (5) defamation.  She brought four additional counts against First Guaranty: (6) conversion; (7) unjust enrichment; (8) trespass; and (9) intentional infliction of emotional distress.  The district court granted summary judgment on all claims based either on an evaluation of the merits or, in the case of the claims for breach of fiduciary duty, defamation, and intentional infliction of emotional distress, on Harbin's representation in her summary-judgment response that she wished to voluntarily dismiss the

Roundpoint made a false representation of fact—that the foreclosure had been suspended temporarily—on which she reasonably relied to her detriment by not filing for bankruptcy. Thus, Harbin asserted that this was a case of "simple fraud," based on a false statement of existing fact, and not "promissory fraud," based on a promise to do something in the future. But to the extent it was the latter, Harbin argued, Roundpoint "never intended to postpone the June 3, 2015, foreclosure."

For her breach-of-contract claim, Harbin contended that there was an agreement between her and Roundpoint to postpone the foreclosure sale. According to Harbin, Roundpoint agreed to postpone the sale in exchange for Harbin's submission of a completed loan-modification package.

The district court granted summary judgment against Harbin. The breach-of-contract claim failed, according to the court, because there was no offer and acceptance and even if there had been, there was no consideration since Roundpoint did not receive any benefit from Harbin in exchange for postponing the sale.

As for the fraud claim, the district court found that it failed whether it was characterized as a claim for simple fraud or promissory fraud. To the extent Harbin's claim was based on a promise to postpone the foreclosure, the court found no

---

claims. Because on appeal Harbin has not briefed any claim other than her claims for fraud and breach of contract, we conclude that she has abandoned any challenge to the dismissal of those other claims. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (issues not briefed on appeal are abandoned).

evidence showing that Roundpoint had an intent to deceive when it made that representation. To the extent her claim was based on a misrepresentation about the state of the foreclosure, the court found that the representation that the sale had been suspended temporarily was not false and that Harbin's reliance was not reasonable. It was not false because, according to the court, the foreclosure had in fact been suspended temporarily due to the earlier forbearance agreement. And Harbin's reliance was not reasonable, the court reasoned, because Gerstenfeld never confirmed that the sale date had been "postponed." Harbin now appeals.

## II.  Standard of Review

We review a district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1249 (11th Cir. 2015). Summary judgment should be granted where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.*

## III.  Discussion

We apply Alabama state law in this diversity action. *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1148 (11th Cir. 2010). Harbin argues that enough evidence supports her state-law claims for breach of contract and fraud to survive summary judgment. We address each claim in turn.

### A.    Breach of Contract

Essential to any claim for breach of contract is the existence of a valid contract between the parties. *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009). "The elements of a valid contract include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Id.* (quotation marks omitted). The element of consideration requires "an act, a forbearance, a detriment, or a destruction of a legal right, or a return promise, bargained for and given in exchange for the promise." *Ex parte Grant*, 711 So. 2d 464, 465 (Ala. 1997) (quotation marks omitted).

Here, the district court properly granted summary judgment on the breach-of-contract claim. Harbin asserts an agreement to postpone the foreclosure sale scheduled for June 3, 2015. But she does not address the court's determination that there was no consideration to support such an agreement. Instead, she argues that the statute of frauds does not bar her claim, that the terms of the contract were sufficiently clear to remain enforceable, and that any ambiguity should be resolved against Roundpoint. Because Harbin wholly fails to address one of the grounds on which the court found that there was not a valid contract, we must affirm the grant of summary judgment on this claim. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is

8

deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed.").

## B.    Fraud

The heart of this case is Harbin's fraud claim.  In Alabama, "[t]he elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation." *Exxon Mobil Corp. v. Ala. Dep't of Conservation & Nat. Res.*, 986 So.2d 1093, 1114 (Ala. 2007).  For the element of reasonable reliance, "if a plaintiff, acting as a reasonably prudent person exercising ordinary care, would have discovered the 'true facts' before acting on the alleged misrepresentation, then, as a matter of law, the plaintiff could not have relied on the misrepresentation." *McGriff v. Minn. Mut. Life Ins. Co.*, 127 F.3d 1410, 1414 (11th Cir. 1997) (ellipsis and quotation marks omitted).

The district court found that Harbin's claim failed for lack of a false statement or reasonable reliance by Harbin.  Specifically, the court concluded that (1) Roundpoint employee Gerstenfeld's statement that the foreclosure sale had been "suspended temporarily" was not false in light of the earlier forbearance agreement; and (2) Harbin did not reasonably rely on that statement because Gerstenfeld never confirmed that the foreclosure sale had been "postponed."  Harbin argues that she satisfied these elements because a reasonable jury could conclude that Roundpoint

made a false representation of a material existing fact on which she reasonably relied to her detriment by not filing for bankruptcy protection. We agree.

Construing the evidence and drawing all reasonable inferences in Harbin's favor, a reasonable jury could conclude that Gerstenfeld's statement—that the foreclosure had been "suspended temporarily"—was a false representation of existing fact on which Harbin reasonably relied.

First, a reasonable jury could find that Gerstenfeld was referring to the June 3 sale date and not to the forbearance agreement. The entire context of his discussion with Harbin was about postponing the upcoming sale so that she could finish, and Roundpoint could review, her loan-modification application. Gerstenfeld clearly understood that this was Harbin's goal. He told her to submit the necessary documentation "and then we will try to do what we can to get that sale postponed." After initially informing her that the sale was "still set to go," he obtained "more clarification" from another person and then told her that it had been "suspended temporarily." Then, in direct response to Harbin's requests for confirmation that the "sale date on my house has been postponed," Gerstenfeld told her that the foreclosure "had been suspended temporarily" and did not suggest that she had misunderstood his meaning.

Given this context, a reasonable jury could find that Gerstensfeld represented that the foreclosure sale scheduled for June 3 had been suspended and would not go

10

forward.  And because Harbin's evidence shows that Roundpoint had not postponed or suspended the foreclosure sale at the time Harbin spoke with Gerstenfeld, a reasonable jury could find that Gerstenfeld made a false representation of an existing fact.  Whether Gerstenfeld acted intentionally or was simply mistaken is not relevant because "[o]rdinarily, intent is not an element of a fraud claim."[2]  *Id.* at n.18; *see* Ala. Code § 6-5-101 ("Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or *if made by mistake and innocently and acted on by the opposite party*, constitute legal fraud." (emphasis added)).

Second, and for similar reasons, Harbin reasonably could have believed that Gerstenfeld's statement that the foreclosure had been "suspended temporarily" was confirming her understanding that the foreclosure sale date had been pushed back and that she had time to finish her loan-modification application.  We do not, as the district court did, attribute much significance to the fact that Gerstenfeld used the term "suspended" rather than "postponed."  Both terms are consistent with the sale date having been pushed back.  And Harbin repeatedly requested confirmation that her understanding was correct and did not receive any contrary information which, through the exercise of ordinary care, would have led her to the "true facts."  *See*

---

[2] While intentional deceit is required to award punitive damages, *see* O.C.G.A. § 6-11-20, Harbin did not seek punitive damages for her fraud claim.

11

*McGriff*, 127 F.3d at 1414.  Drawing all reasonable inferences in her favor, Harbin

reasonably relied on Gerstenfeld's statement by refraining from filing for bankruptcy

before June 3.  *See Exxon Mobil*, 986 So.2d at 1116 (stating that the element of

reliance requires the injured party to change its course of action because of the

misrepresentation).

Finally, as for the other elements of fraud, a reasonable jury could conclude

that the false statement was "material" because it was the key to Harbin's decision

whether to file for bankruptcy before the June 3 sale.  She made that clear to

Gerstenfeld in the conversation.  That is also likely enough to show that Harbin

"suffered damage as a proximate consequence of the misrepresentation," *see id.* at

1114, though Roundpoint does not argue this element.

The district court also found that Harbin could not establish a claim of

promissory fraud.  Harbin maintains that this is not a promissory-fraud case and that

her claim is based on a representation of an existing fact.  Because we conclude that

there is sufficient evidence to support Harbin's claim of simple fraud, we do not

consider whether Harbin also could sustain a claim of promissory fraud or fraudulent

suppression.[3]

---

[3] Plus, as Roundpoint points out, Harbin did not argue a claim of fraudulent suppression before the district court, so it is not properly before us on appeal.  *See Exxon Mobil Corp.*, 986 So. 2d at 1114–15 (listing the elements of a claim for fraudulent suppression).  Likewise, because Harbin did not argue below that the foreclosure sale was invalid because Roundpoint failed to follow the notice procedures set out in the mortgage, we will not consider this argument for the first time on appeal.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir.

## C.    *Claims Against First Guaranty*

Though we conclude that enough evidence supports a fraud claim against Roundpoint, the same cannot be said for the claims against First Guaranty.  The district court dismissed the fraud claim against First Guaranty, which was based solely on an agency relationship between Roundpoint and First Guaranty, because Harbin failed to show that Roundpoint was First Guaranty's agent.  The court explained that the existence of an agency relationship in Alabama depends on a "retained right to control," and it found that Harbin offered no "evidence, much less substantial evidence, that First Guaranty retained or exercised a right of control over Roundpoint."  Doc. 68 at 16 n.9 (citing *McLemore v. Ford Motor Co.*, 628 So. 2d 548, 551 (Ala. 1993)).

Aside from simply asserting that "Roundpoint was First Guaranty's agent, and is equally responsible," Harbin does not explain in her initial brief why the district court erred on this issue.  That is not sufficient to preserve the issue.  *See Sapuppo*, 739 F.3d at 681 ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").  Her arguments in the reply brief come too late.  *See id.* at 682–83 (arguments raised for the first time in a reply brief are not

---

2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." (quotation marks omitted)).

13

properly before us). Accordingly, the district court properly granted summary judgment in favor of First Guaranty.

## IV. Conclusion

For the reasons stated, we vacate the grant of summary judgment to Roundpoint on Harbin's fraud claim and remand for further proceedings. We affirm the grant of summary judgment against Harbin in all other respects.

**AFFIRMED IN PART; VACATED IN PART AND REMANDED.**